**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re:<br>INTERNATIONAL SHIPHOLDING<br>CORPORATION, *et al.*,[1]<br><br>Reorganized Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case No. 16-12220 (SMB)<br><br>Jointly Administered |
| BOARD OF TRUSTEES OF THE MEBA<br>PENSION TRUST – DEFINED BENEFIT<br>PLAN; BOARD OF TRUSTEES OF THE<br>MASTERS, MATES & PILOTS PENSION<br>PLAN; and BOARD OF TRUSTEES OF THE<br>MASTERS, MATES & PILOTS<br>ADJUSTABLE PENSION PLAN,<br><br>Plaintiffs,<br>v.<br><br>CG RAILWAY, LLC, d/b/a CG RAILWAY,<br>INC.; BULK SHIPHOLDING, INC.; EAST<br>GULF SHIPHOLDING, INC.; JOHN DOE<br>CORPORATIONS "1" THROUGH "100" and<br>OTHER JOHN DOE ENTITIES "1"<br>THROUGH "100,"<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding Case<br>No. 19-01006 (SMB) |

## DEFENDANT CG RAILWAY, LLC'S ANSWER AND COUNTERCLAIMS TO COMPLAINT

Defendant CG Railway, LLC ("**Defendant**" or "**CG Railway**"),[2] by its undersigned

attorneys, hereby files its Answer and Counterclaims ("**Answer**") to the *Complaint* [Adversary

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); and LCI Shipholdings, Inc. (8094).  The service address for each of the above Reorganized Debtors is 2200 Eller Drive, P.O. Box 13038, Fort Lauderdale, FL 33316.

[2] The other defendants in this action include Bulk Shipholding, Inc. ("**Bulk Shipholding**"); East Gulf Shipholding, Inc. ("**East Gulf**"); John Doe Corporations "1" Through "100" and Other John Doe Entities "1" Through "100."

Proceeding Docket No. 1] ("**Complaint**") of Plaintiffs the MEBA Pension Trust – Defined

Benefit Pension Plan ("**MEBA Pension Plan**"); the Masters, Mates & Pilots Pension Plan; and

the Masters, Mates & Pilots Adjustable Pension Plan (together, with the Masters, Mates & Pilots

Pension Plan, the "**MM&P Pension Plan**") (collectively, the "**Plaintiffs**" or the "**Pension**

**Plans**").  Defendant CG Railway denies any and all allegations in the Complaint that are not

specifically and expressly admitted herein.  Capitalized terms not defined herein shall have the

definition accorded to them in the Complaint.

## NATURE OF THE ACTION

1.      The allegations in sentence 1 in Paragraph 1 consist of a characterization of the

Complaint to which no response is required.  Defendant CG Railway admits that in connection

with the chapter 11 bankruptcy of the Debtors[3] in *In re: International Shipholding Corporation,*

*et. al.*, Case No. 16-12220 (the "**Bankruptcy Proceeding**"), each of the Pension Plans entered

into settlement agreements, dated February 13, 2017, with the Debtors International Shipholding

Corporation ("**ISH**"), Waterman Steamship Corporation, Sulphur Carriers Inc., and Central Gulf

Lines, Inc. related to the full release of claims for alleged present or future liability relating to

unpaid contributions and/or withdrawal liability "against ISH, Reorganized ISH, or Seacor

Capital Corp., or any of the foregoing's respective past, present, or future subsidiaries or

---

Upon information and belief, Plaintiff has not served, to date, the summons or complaint in this action upon any
other defendants.

[3] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: International
Shipholding Corporation (9662) ("ISH"); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf
Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co.,
Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC
(8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE
LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and
Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras
Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130

affiliates" (the "**Settlement Agreements**").  Defendant CG Railway expressly denies the

characterization of the Settlement Agreements contained in Paragraph 1.

2.      Defendant CG Railway admits that the Debtors had a complete withdrawal from

each of the Pension Plans.  Defendant CG Railway admits that on March 2, 2018 and March 8,

2018, the Pension Plans sent notices and demands (the "**Notice and Demand**") to CG Railway,

Bulk Shipholding, and East Gulf, alleging withdrawal liability against the Control Group

Defendants in the total amount of $58,856,388.  Defendant CG Railway denies that that the

Control Group Defendants owe any amount of withdrawal liability to the Pension Plans except as

may be provided for with respect to general unsecured claims pursuant to the Settlement

Agreements.  Defendant CG Railway denies that the Pension Plans are entitled to the declaratory

judgment sought in the Complaint.  Defendant CG Railway otherwise denies the allegations in

Paragraph 2.  Defendant CG Railway asserts that any claims for withdrawal liability against it—

outside of general unsecured claims against the Debtors in the Bankruptcy Proceeding—were

completely released pursuant to the Settlement Agreements.

## JURISDICTION AND VENUE

3.      Defendant CG Railway admits only that this Court has jurisdiction over this

adversary proceeding, which arises in, and relates to the Bankruptcy Proceeding.  The remaining

allegations contained in this paragraph of the Complaint state conclusions of law to which no

response is required.

4.      The allegations set forth in Paragraph 4 of the Complaint constitute legal

conclusions to which no answer is required.  To the extent a response is required, Defendant

admits the allegations.

5.      The allegations set forth in Paragraph 5 of the Complaint constitute legal conclusions to which no answer is required.  To the extent a response is required, Defendant admits the allegations.

6.      The allegations set forth in Paragraph 6 of the Complaint constitute legal conclusions to which no answer is required.  To the extent a response is required, Defendant admits the allegations.

## **PARTIES**

7.      Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8.      Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9.      Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint.

10.      Defendant CG Railway admits that it is a limited liability company organized under the laws of Delaware.  Defendant CG Railway admits that its principal place of business is located at 601 Poydras Street, Suite 1625, New Orleans, Louisiana 70130.  Defendant CG Railway admits that CG Railway, Inc. was a non-Debtor subsidiary of Debtor ISH.  Defendant CG Railway otherwise denies the allegations in Paragraph 10.  CG Railway is currently a non-Debtor affiliate of Reorganized ISH.

11.      Upon information and belief, Defendant CG Railway admits that Defendant Bulk Shipholding was a corporation organized under the laws of the Marshall Islands that dissolved in April 2017.  Defendant CG Railway admits that Defendant Bulk Shipholding was a non-Debtor subsidiary of ISH.

12.     Upon information and belief, Defendant CG Railway admits that Defendant East Gulf was a corporation organized under the laws of the Marshall Islands that dissolved in April 2017.  Defendant CG Railway admits that Defendant East Gulf was a non-Debtor subsidiary of ISH.

13.     Defendant CG Railway admits that it was under common control of the Debtors at the time of the Debtors' withdrawal from the Pension Plans.  Defendant CG Railway otherwise denies the allegations in Paragraph 13.  Defendants Bulk Shipholding and East Gulf were dissolved at the time of the Debtors' withdrawal from the Pension Plans.

14.     The allegations set forth in Paragraph 14 of the Complaint constitute legal conclusions to which no answer is required.  To the extent a response is required, Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15.     The allegations set forth in Paragraph 15 of the Complaint constitute legal conclusions to which no answer is required.  To the extent a response is required, Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16.     The allegations set forth in Paragraph 16 of the Complaint constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendant CG Railway denies the allegations.

## **BACKGROUND FACTS**

17.     Defendant CG Railway admits the allegations in Paragraph 17.

18.     Defendant CG Railway admits the allegations in Paragraph 18.

19.     Defendant CG Railway admits that, *prior* to the Bankruptcy Proceeding, under the collective bargaining agreements with MM&P and MEBA, the Debtors were required to make monthly contributions to various employee benefit plans including the Pension Plans. Defendant CG Railway otherwise denies the allegations in Paragraph 19.  As detailed further below in Paragraphs 70 through 90 of this Answer, new collective bargaining agreements were subsequently negotiated with MM&P and MEBA as part of the Bankruptcy Proceeding that went into effect on the Effective Date.  These agreements did not require the Debtors to make any contributions to the various MM&P and MEBA employee benefit plans, including the Pension Plans.

20.     Defendant CG Railway admits the allegations in Paragraph 20.

21.     Defendant CG Railway admits the allegations in Paragraph 21.

22.     Defendant CG Railway admits the allegations in Paragraph 22.

23.     Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant CG Railway admits that the Licensed Officer Plans filed proofs of claims as set forth in Paragraph 24 of the Complaint.  Defendant CG Railway lacks knowledge or information sufficient to form a belief as to whether such claims were accurately assessed as set forth in Paragraph 24 of the Complaint.

25.     Defendant CG Railway admits that the Pension Plans filed proofs of claim as set forth in Paragraph 25 of the Complaint.  Defendant CG Railway lacks knowledge or information sufficient to form a belief as to whether such claims were accurately assessed as set forth in Paragraph 25 of the Complaint.

26.     Defendant CG Railway admits that the Pension Plans filed proofs of claim against the Debtors for contingent withdrawal liability as set forth in Paragraph 26 of the Complaint. Defendant CG Railway lacks knowledge or information sufficient to form a belief whether such claims were accurately assessed.

27.     Defendant CG Railway admits that each of the Pension Plans filed proofs of claim against the Debtors for contingent withdrawal liability as set forth in Paragraph 27 of the Complaint.  Defendant CG Railway lacks knowledge or information sufficient to form a belief as whether such claims were accurately assessed as set forth in Paragraph 27 of the Complaint.

28.     Defendant CG Railway admits that each of the Pension Plans filed contingent withdrawal liability claims as set forth in Paragraph 28.  Defendant CG Railway lacks knowledge or information sufficient to form a belief as to whether such claims were accurately assessed as set forth in Paragraph 28 of the Complaint.

29.     The allegations in Paragraph 29 consist of a characterization of the Withdrawal Liability Proofs of Claim to which no response is required.  To the extent a response is required, Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint.

30.     The allegations in Paragraph 30 consist of characterizations of certain motions filed in the Bankruptcy Proceeding, to which no response is required.  To the extent a response is required, Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

31.     With respect to sentence 1 of Paragraph 31, Defendant CG Railway denies the characterization of the settlement discussions but admits that during the course of the Debtors' Bankruptcy Proceeding, the Debtors, SEACOR Capital Inc., the bankruptcy plan sponsor

("**SEACOR**"), and representatives of the Pension Plans engaged in extensive negotiations regarding past, present, or future liability related to the multiemployer pension plans. Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 31 of the Complaint.

32.      To the extent Paragraph 32 purports to characterize the terms of the *First Amended Joint Chapter 11 Plan of Reorganization for International Shipholding Corporation and its Affiliated Debtors* [Bankruptcy Proceeding Docket No. 485] (the "**Plan**") and the *Disclosure Statement for First Amended Joint Chapter 11 Plan of Reorganization for International Shipholding Corporation and Its Affiliated Debtors* [Bankruptcy Proceeding Docket No. 486] (the "**Disclosure Statement**"), CG Railway refers to the Plan and Disclosure Statement, respectively, for a complete and accurate statement of its contents, and denies the allegations of Paragraph 32 to the extent they are inconsistent with the Plan and Disclosure Statement, respectively.

33.      The allegations in Paragraph 33 consist of a characterization of the Licensed Officer Plans' *Reservation of Rights to Object to the Plan* [Bankruptcy Proceeding Docket No. 502] to which no response is required. To the extent a response is required, Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint.

34.      To the extent Paragraph 34 purports to characterize the terms of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of Reorganization for International Shipholding Corporation and Its Affiliated Debtors* filed January 5, 2017 [Bankruptcy Proceeding Docket No. 507] (the "**Modified Disclosure Statement**"), CG Railway refers to the Modified Disclosure Statement for a complete and accurate statement of its contents, and denies

8

the allegations of Paragraph 34 to the extent they are inconsistent with the Modified Disclosure

Statement.

35.    The allegations in Paragraph 35 consist of a characterization of the Licensed

Officers Plans' reply brief to which no response is required.  To the extent a response is required,

CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 35 of the Complaint.

36.    Defendant CG Railway lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 36 of the Complaint.

37.    Defendant CG Railway lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 37 of the Complaint.

38.    Defendant CG Railway lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 38 of the Complaint.

39.    Defendant CG Railway lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 39 of the Complaint.

## THE BANKRUPTCY CLAIMS SETTLEMENTS

40.    Defendant CG Railway admits that on February 13, 2017, various employee

benefit plans associated with the Marine Engineers' Beneficial Association, AFL-CIO

("**MEBA**"), including the MEBA Pension Plan, entered into a settlement letter with the Debtors

ISH, Waterman Steamship Corporation, Sulphur Carriers Inc., and Central Gulf Lines (the

"**MEBA Settlement Letter**").  To the extent Paragraph 40 purports to characterize the MEBA

Settlement Letter, Defendant CG Railway refers to the MEBA Settlement Letter for a complete

and accurate statement of its contents, and denies the allegations of Paragraph 40 to the extent it

is inconsistent with the MEBA Settlement Letter.  Defendant CG Railway explicitly denies the characterization of the releases included in the MEBA Settlement Letter.

41.     Defendant CG Railway admits on February 13, 2017, various employee benefit plans associated with the International Organization of Masters, Mates & Pilots, ILA/AFL-CIO ("**MM&P**"), including the MM&P Pension Plan, entered a settlement letter with the Debtors ISH, Waterman Steamship Corporation, Sulphur Carriers Inc., and Central Gulf Lines (the "**MM&P Settlement Letter**").  To the extent Paragraph 41 purports to characterize the MM&P Settlement Letter, Defendant CG Railway refers to the MM&P Settlement Letter for a complete and accurate statement of its contents, and denies the allegations of Paragraph 41 to the extent it is inconsistent with the MM&P Settlement Letter.  Defendant CG Railway explicitly denies the characterization of the releases included in the MM&P Settlement Letter.

42.     Defendant CG Railway admits that the Settlement Agreements, consisting of the MEBA Settlement Letter and the MM&P Settlement Letter, contained the release language set forth in Paragraph 42, but would emphasize different portions of the release language:

> By signing below, in exchange for a payment from ISH and/or its subsidiaries in the total amount of [the Settlement Payments],[4] payable within 15 business days of the Effective Date of the Plan (as defined therein), [the Pension Plans] agree not to assert any priority or administrative claims, on their behalf or on behalf of any plan participants or any other person or entity, ***against ISH, Reorganized ISH, or Seacor Capital Corp., or any of the foregoing's respective past, present or future subsidiaries or affiliates***, ***relating to unpaid contributions*** to [the Pension Plans] owed through the date of this letter, ***or any withdrawal liability incurred by ISH or any other past or present subsidiary or affiliate thereof***.

(emphasis added).

43.     Defendant CG Railway denies the characterization of the Settlement Agreements set forth in Paragraph 43.  As set forth in the release provision above, in exchange for lump-sum

---

[4] Capitalized words not otherwise defined shall have the meaning ascribed to such terms below.

payments, the Settlement Agreements released the Debtors, Reorganized Debtors, and SEACOR as well as the foregoing's respective past, present, and future subsidiaries and affiliates, including non-Debtor subsidiaries such as Defendant CG Railway from any claims arising from or related in any way to: (1) unpaid contributions to the Pension Plans; or (2) any contingent, estimated, or actual withdrawal liability incurred as a result of withdrawal from the Pension Plans.

44.    Defendant CG Railway denies the allegations in Paragraph 44.

45.    Defendant CG Railway disputes the characterization of the Settlement Agreements in Paragraph 45 and thus denies the allegations contained in Paragraph 45.

46.    Defendant CG Railway disputes the characterization of the Settlement Agreements in Paragraph 46 and thus denies the allegations contained in Paragraph 46.

47.    Defendant CG Railway disputes the characterization of the Settlement Agreements in Paragraph 47 and thus denies the allegations contained in Paragraph 47.

48.    Defendant CG Railway disputes the characterization of the Settlement Agreements in Paragraph 48 and thus denies the allegations contained in Paragraph 48. The Settlement Agreements released the Debtors, Reorganized Debtors, and SEACOR as well as the foregoing's respective past, present, and future subsidiaries and affiliates, including non-Debtor subsidiaries such as Defendant CG Railway from any claims arising from or related in any way to: (1) unpaid contributions to the Pension Plans; or (2) any contingent, estimated, or actual withdrawal liability incurred as a result of withdrawal from the Pension Plans.

49.    Defendant CG Railway disputes the characterization of the negotiations leading to the Settlement Agreements and thus denies the allegations contained in Paragraph 49.

50.     Defendant CG Railway disputes the characterization of the negotiations leading to the Settlement Agreements and thus denies the allegations contained in Paragraph 50.

51.     Defendant CG Railway denies the allegations contained in Paragraph 51.  As set forth in numerous filings related to the Bankruptcy Proceeding, counsel for the Debtors repeatedly asserted that their representation encompassed all of ISH, including its subsidiaries such as Defendants CG Railway, Bulk Shipholding and East Gulf.

52.     The allegations in Paragraph 52 refer to certain purported communications. Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 of the Complaint.  Further, Defendant CG Railway refers to the Settlement Agreements for a complete and accurate statement of its contents, and denies the allegations of Paragraph 52 to the extent they attempt to modify the language in the Settlement Agreements and/or are otherwise inconsistent with Settlement Agreements.

**THE PENSION PLANS' WITHDRAWAL LIABILITY ASSESSMENTS**

53.     Paragraph 53 states a legal conclusion to which no response is required.  To the extent a response is required, Defendant CG Railway lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint.

54.     Defendant CG Railway denies the characterization of the transmission of the Notice and Demand set forth in Paragraph 54.  The Pension Plans originally sent the Notice and Demand to SEACOR, which was represented by separate counsel in the Bankruptcy Proceeding. Counsel for Defendant CG Railway eventually agreed to accept service on behalf of CG Railway, Bulk Shipholding, Inc., and East Gulf Shipholding, Inc., of the Notice and Demand. CG Railway admits that the Notice and Demand alleged withdrawal liability against the Control

Group Defendants in the total amount of $58,856,388.  Defendant CG Railway denies that it owes any amount of withdrawal liability to the Pension Plans.

55.      Defendant CG Railway denies the allegations contained in Paragraph 55.  As set forth in numerous filings related to the Bankruptcy Proceeding filed prior to April 19, 2018, counsel for the Debtors repeatedly asserted that their representation encompassed all of ISH, including its subsidiaries such as Defendants CG Railway, Bulk Shipholding and East Gulf.

56.      Defendant CG Railway admits that on May 25, 2018, counsel for the Reorganized Debtors responded to the Notice and Demand by letters to the Pension Plans (the "**Response Letters**") and denied withdrawal liability of the Reorganized Debtors and its controlled members, including CG Railway, on the basis that such liability was fully and finally released by the terms of the Settlement Agreements.  Defendant CG Railway explicitly denies Plaintiffs' characterization of the Response Letters as "incorrect."

57.      Defendant CG Railway admits that in the Response Letters, the Reorganized Debtors informed the Pension Plans that the "non-debtor entities included in the Notice and Demand, except for CG Railway, Inc. are all foreign subsidiaries" and that "none of these companies have assets, or any other means, to pay any of the claimed withdraw liability, even if personal jurisdiction could be established."  Defendant CG Railway otherwise denies the allegations contained in Paragraph 57 of the Complaint.

## COUNT I:  CLAIM FOR DECLARATORY JUDGMENT

58.      In response to Paragraph 58, Defendant CG Railway incorporates its responses to Paragraphs 1 through 57 as if they were fully set forth herein.

59.      Defendant CG Railway denies the allegations contained in Paragraph 59 of the Complaint.

60.     The allegations in Paragraph 60 state legal conclusions to which no response is required.  To the extent a response is required, Defendant CG Railway denies the allegations in Paragraph 60.

61.     The allegations in Paragraph 61 state legal conclusions to which no response is required.  To the extent a response is required, Defendant CG Railway denies the allegations in Paragraph 61.

## PLAINTIFFS' REQUEST FOR RELIEF

62.     Plaintiffs' requests consist of legal requests for relief to which no response is required.  To the extent a response is required, Defendant CG Railway denies the allegations in Plaintiffs' requests.

## FIRST AFFIRMATIVE DEFENSE
### (Release)

63.     Plaintiffs' claim is barred by the release provision in the Settlement Agreements.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

64.     Plaintiffs fail to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE
### (Waiver)

65.     Plaintiffs' claim is barred due to its own waiver.

## FOURTH AFFIRMATIVE DEFENSE
### (Estoppel)

66.     Plaintiffs' claim is barred due to estoppel.

## COUNTERCLAIMS

**A.  Additional Background Facts**

   i.  Pre-petition Relationship and Negotiations Between the Unions and the Debtors

67.     These counterclaims arise out of a dispute between the Debtors and the Pension

Plans relating to benefits plans for the Debtors' unionized deck and engineering officers, who

were responsible for operating, navigating, and maintaining the Debtors' vessels.

68.     MEBA represents the licensed engineering officers who operated, maintained and

repaired the ships' propulsion plant and other auxiliary machinery and equipment on the vessels.

69.     MM&P represents the deck officers employed on certain of the Debtors' vessels,

including licensed captains and mates who navigated vessels and ensured cargo operations were

performed safely.

70.     Prior to the Bankruptcy Proceeding, the Debtors were parties to collective

bargaining agreements with MEBA and MM&P and were required to make monthly

contributions on behalf of the officers to various employee benefit plans, including the Pension

Plans.

71.     Upon information and belief, in and around January 2016, the Debtors started to

fall behind on their payments of contributions to the Pension Plans.  Upon information and

belief, the negotiating committees of MEBA and MM&P (collectively, the "**Unions**") then

worked with the Debtors throughout March 2016 to develop a workable payment schedule.

72.     However, ultimately, the Debtors were unable to adhere to the payment schedule.

Additionally, during this same period, the Debtors were facing significant financial challenges

related to complying with its debt covenants and meeting minimum liquidity requirements to

operate.  As a result, the Debtors filed for bankruptcy on August 1, 2016 in the Bankruptcy

Proceeding.

ii.  <u>Negotiations Between the Pension Plans, the Unions and the Debtors During the
Bankruptcy Proceeding and Ultimate Settlement Agreements</u>

73.    Throughout the Bankruptcy Proceeding, the Debtors and SEACOR engaged in
frequent and open discussions with the Pension Plans regarding the Debtors' alleged withdrawal
liability.  These discussions were generally broken up into two categories:  (1) what the Debtors
were willing to agree to; and (2) what the Reorganized Debtors and/or SEACOR were willing to
agree to.

74.    The Debtors were willing to (a) pay the agreed-upon settlement amount with
respect to amounts owed on account of past contributions and withdrawal liability; and (b) agree
to permit the Pension Plans to seek general unsecured claims against the Debtors in the
Bankruptcy Proceeding for "any contingent, estimated, or actual withdrawal liability."  All other
claims related to unpaid contributions or withdrawal liability against the Debtors or any of their
past, present, or future affiliates or subsidiaries were disclaimed by the Debtors and were
ultimately settled pursuant to the Settlement Agreements.

75.    The Reorganized Debtors and SEACOR (and their respective affiliates and
subsidiaries) were never willing to pay any amounts on account of past contributions or
withdrawal liability, and the settlement negotiations reflected this understanding.

76.    As such, the Debtors, the Reorganized Debtors, and SEACOR repeatedly
reiterated that they would never agree to any settlement that would result in potential withdrawal
liability for any of the Debtors, the Reorganized Debtors, or SEACOR or any of their respective
past, present, or future affiliates or subsidiaries, *other than* for:  (1) payments made under the
Settlement Agreements; and (2) general unsecured claims against the Debtors put forth in the
Bankruptcy Proceeding.

77.    SEACOR and the Reorganized Debtors also made clear that they would not be willing to make any post-emergence contributions to any multiemployer pension plan in order to avoid the risk of future withdrawal liability.

78.    Specifically, the Debtors, SEACOR, and the Unions engaged in collective bargaining negotiations from approximately November 10, 2016 through December 14, 2016 to reach new collective bargaining agreements ("**New CBAs**") covering the Reorganized Debtors' unionized workforce (the "**Union Negotiations**"), to be effective upon emergence.  Under the New CBAs, the Reorganized Debtors would not be required to make any contributions to the Pension Plans, nor would they be liable for any of the Debtors' previous obligations to the Pension Plans.

79.    The lead negotiators for the Unions, H. Marshall Ainley, President of MEBA, and Donald Marcus, President of MM&P, also serve as trustees for MEBA and MM&P, respectively (collectively, the "**MEBA and MM&P Plan Trustees**").

80.    During the course of the Union Negotiations, the Debtors and SEACOR repeatedly notified each of these MEBA and MM&P Plan Trustees that the Reorganized Debtors would not consider contributing to the Pension Plans because they did not want to expose the reorganized company, or any entity currently or that would be affiliated with the Reorganized Debtors, to potential withdrawal liability, whether past or future; nor would the Reorganized Debtors participate in or be liable for any previous obligations to the Pension Plans. Significantly, counsel for the Pension Plans attended one such MEBA meeting on November 10, 2016, when a representative of SEACOR explicitly stated this.  The Unions and the MEBA and MM&P Plan Trustees agreed that the Reorganized Debtors would not participate in the Pension Plans upon emergence.

81.     Furthermore, during the course of the Bankruptcy Proceeding, the Debtors actively engaged with the Pension Plans themselves to keep them informed of the restructuring process and to discuss agreements between them in good faith.

82.     The Debtors also responded to all requests for information promulgated by the Pension Plans and engaged in good-faith negotiations regarding the extent, if any, of the Debtors' contribution and withdrawal liability obligations to the Pension Plans.

83.     Immediately prior to confirmation of the Plan, the Debtors and the Pension Plans entered into settlement discussions regarding a release of all liability arising from the pension obligations in exchange for large lump-sum payments.  The negotiations regarding the amount of the lump-sum payments related to how much the Debtors would pay on account of the Pension Plans' administrative and/or priority claims, with the express understanding between the parties that upon such payments, the Pension Plans would forever release the Debtors, the Reorganized Debtors, and SEACOR as well as any of the foregoing's past, present, or future subsidiaries or affiliates from *any and all* claims for unpaid contribution or withdrawal liability, with the sole exception of any potential general unsecured claims.

84.     These negotiations led to the Settlement Agreements, which the parties executed on February 13, 2017.  The Settlement Agreements are comprised of two letters: (1) a settlement letter between the MEBA Pension Plan and the Debtors dated February 13, 2017; and (2) a settlement letter between the MM&P Pension Plan and the Debtors dated February 13, 2017 (collectively, the "**Settlement Letters**"), which contain identical release provisions.

85.     Furthermore, the Debtors' entry into the Settlement Agreements were supported by the Committee, the Debtors' Pre-Petition Secured Parties, and SEACOR.  *See Memorandum of Law in Support of Confirmation and Omnibus Reply to Objections to Confirmation of First*

18

*Amended Joint Chapter 11 Plan of Reorganization for International Shipholding Corporation and Its Affiliated Debtors* [Bankruptcy Proceeding Docket No. 628] at ¶¶ 29-31.

86.    Pursuant to the terms of the Settlement Agreements, the Debtors agreed to make, and made, lump-sum payments of $1,224,258.30 and $1,319,253.50 to the MM&P Pension Plan and MEBA Pension Plan, respectively (together, the "**Settlement Payments**"), within 15 business days of the Effective Date.  In consideration for the Settlement Payments, the Pension Plans agreed to release the Debtors, the Reorganized Debtors, and SEACOR as well as any of the foregoing's past, present, or future subsidiaries or affiliates from any claims for unpaid contribution or withdrawal liability.  Specifically, the exact language of the release provisions ("**Releases**") of the Settlement Letters comprising the Settlement Agreements is as follows:

> By signing below, in exchange for a payment from ISH and/or its subsidiaries in the total amount of [the Settlement Payments], payable within 15 business days of the Effective Date of the Plan (as defined therein), [the Pension Plans] agree not to assert any priority or administrative claims, on their behalf or on behalf of any plan participants or any other person or entity, against ***ISH, Reorganized ISH, or Seacor Capital Corp., or any of the foregoing's respective past, present or future subsidiaries or affiliates***, ***relating to unpaid contributions to [the Pension Plans] owed through the date of this letter, or any withdrawal liability incurred by ISH or any other past or present subsidiary or affiliate thereof***.

Settlement Agreements, p. 1 (emphasis added)**.**

87.    As such, the Releases unambiguously apply to the past, present, or future subsidiaries of the Debtors and Reorganized Debtors, regardless of whether such entities were Debtors or non-Debtors in the Bankruptcy Proceeding.  Thus, the Releases apply to the members of the Debtors' controlled group, including Defendant CG Railway.

88.     Furthermore, the Releases provided for a singular carve-out to the effect that "nothing [in the Settlement Agreements] shall be construed to prohibit the [Pension Plans] from pursuing a general unsecured claim against the Debtors . . . for any contingent, estimated, or actual withdrawal liability incurred by ISH as a result of any Debtor entity effecting a partial or complete withdrawal from the [Pension Plans]."  Settlement Agreements, p. 1.

89.     This was the only explicit exception from the Releases.

90.     In addition, in their capacity as Union Presidents, each of the MEBA and MM&P Plan Trustees executed waivers under the New CBAs, effective upon emergence, similar to those executed by the Pension Plans, waiving any and all claims, contractual or statutory, including withdrawal liability claims, arising out of any collective bargaining agreement between the Unions and ISH or any past or present subsidiary or affiliate thereof, but similarly reserving the right of the Unions to pursue a general unsecured claim against the Debtors for any withdrawal liability incurred by the Debtors as of the Effective Date of the Plan.

91.     On March 2, 2017, the Bankruptcy Court entered *Findings of Fact, Conclusions of Law and Order Confirming First Amended Modified Joint Chapter 11 Plan of Reorganization for International Shipholding Corporation and Its Affiliated Debtors* [Bankruptcy Proceeding Docket No. 671] (the "**Confirmation Order**").

92.     The Confirmation Order confirmed the Plan.

93.     The Plan became effective on July 3, 2017 (the "**Effective Date**").

94.     As of the Effective Date, pursuant to the Plan and the Confirmation Order, the Court authorized the Debtors to enter into the Settlement Agreements and authorized the Reorganized Debtors and the Pension Plans to take all action necessary to effectuate the terms of the Settlement Agreements.  *See* Plan at § 5.20; Confirmation Order at ¶¶ BB; Section M, ¶ 35.

95.    Specifically, the Confirmation Order provides that "[t]he Debtors have reached an
agreement with respect to all outstanding issues with the Benefit Plans [ . . . ]  Subsequent to the
filing of the Disclosure Statement, the Debtors and the remaining Union Benefit Plans reached
an agreement with respect to the treatment of the administrative and priority claims asserted by
the remaining Union Benefit Plans."  Confirmation order at ¶ U.  The Debtors were to make
lump-sum payments 15 days after the Effective Date to each of the Pension Plans, and the
Pension Plans would "retain the right to assert General Unsecured Claims against the Debtors."
*Id*.  Furthermore, the Confirmation Order specified that:

> The Plan provides for the comprehensive settlement of Claims against the Debtors
> and other controversies, which are reflected in the relative distributions and
> recoveries or holders of Claims and Interests under the Plan.  The negotiations of
> such settlements were conducted in good faith and at arm's length, and each such
> settlement is of benefit to the Debtors' Estates and represents a fair, necessary and
> reasonable compromise of the Claims held by the holders thereof. [ . . . ]  The
> Settlements also have facilitated the creation and implementation of the Plan and
> benefit the Estates and the Debtors' creditors, including [ . . .] the Union Benefit
> Plans.  The terms and conditions of each such compromise and settlement are fair
> and reasonable and an integral part of the Plan.

Confirmation Order at ¶ BB.

96.    The Confirmation Order declared that the "settlements with the Benefit Plans are
approved and the Debtors and other parties in interests are authorized to take all action necessary
to effectuate them[.]"  Confirmation Order at Section M, ¶ 35.

iii.  <u>Pension Plans Send Notice and Demand In Direct Violation of Settlement Agreements</u>

97.    Despite the Releases, by letters dated March 2, 2018 and March 8, 2018
comprising the Notice and Demand, eight months after the Effective Date, the Boards of Trustees
of the MEBA Pension Plan and MM&P Pension Plan, respectively, asserted that certain members
of the Reorganized Debtors' controlled group withdrew from the Pension Plans on July 2, 2017

and that certain non-Debtor members of the controlled group—specifically CG Railway, Bulk

Shipholding, Inc., and East Gulf Shipholding, Inc.—were jointly and severally liable for a total

of $23,305,416 to MEBA and $35,533,895 to MM&P on account of the withdrawal from the

Pension Plans.

98.     On May 25, 2018, the Reorganized Debtors sent Response Letters to each of the

Pension Plans responding to the Notice and Demand.  The Response Letters assert that any and

all issues relating to any withdrawal liability of the Reorganized Debtors and non-Debtor

members of their controlled group were fully and finally resolved in the Settlement Agreements

negotiated and agreed to by the Pension Plans and approved by the Court pursuant to the Plan

and the Confirmation Order.

99.     As such, the Response Letters demanded that the Pension Plans rescind the

assessments set forth in the Notice and Demand.  Further, although the Reorganized Debtors

disputed (and continue to dispute) any withdrawal liability owed to the Pension Plans beyond

that set forth in the Settlement Agreements, out of an abundance of caution, the Response Letters

also requested that the Pension Plans review the assessments outlined in the Notice and Demand

as overstated and improperly asserted against foreign entities not subject to ERISA.

100.     On September 18, 2018 and September 19, 2018, MEBA Pension Plan and

MM&P Pension Plan, respectively, responded to the Response Letters and asserted that the

Settlement Agreements only released claims the Pension Plans held against the Debtors in the

Bankruptcy Proceeding.  The Pension Plans incorrectly argued that they did not release any

withdrawal liability claims that the Pension Plans could assert against non-Debtor subsidiaries or

non-Debtor affiliates of the Debtors.

## COUNT I: COUNTERCLAIM FOR DECLARATORY JUDGMENT

101.    CG Railway incorporates its responses in the foregoing paragraphs as if they were fully set forth herein.

102.    An actual and justifiable controversy exists between Defendant CG Railway and the Pensions Plans regarding whether Defendant CG Railway was released from any and all claims for unpaid contribution and withdrawal liability by the terms of the Settlement Agreements.

103.    Pursuant to the Settlement Agreements, any and all claims for unpaid contribution and withdrawal liability by or on behalf of the Pension Plans were completely and fully released against all past, present, and future subsidiaries and affiliates of the Debtors, SEACOR, and Reorganized Debtors, including CG Railway.

104.    CG Railway seeks a declaratory judgment from this Court, declaring that the Settlement Agreements released the Debtors, Reorganized Debtors, and SEACOR as well as the foregoing's respective past, present, and future subsidiaries and affiliates, including non-Debtor subsidiaries such as Defendant CG Railway, from any claims arising from or related in any way to:  (1) unpaid contributions to the Pension Plans; or (2) any contingent, estimated, or actual withdrawal liability incurred as a result of withdrawal from the Pension Plans.

105.    CG Railway further seeks a declaratory judgment from this Court, declaring that any attempt by the Pension Plans to recover any amount in excess of the Settlement Payments from the Debtors, Reorganized Debtors, SEACOR or any of the foregoing's respective past, present, or future subsidiaries or affiliates, on account of claims related to unpaid contributions to the Pension Plans or any contingent, estimated, or actual withdrawal liability incurred as a result

of withdrawal from the Pension Plans, directly violates the terms of the Plan and Confirmation Order.

## COUNT II: COUNTERCLAIM FOR INJUNCTION

106.    CG Railway incorporates its responses in the foregoing paragraphs as if they were fully set forth herein.

107.    Pursuant to the Settlement Agreements, any and all claims for unpaid contribution and withdrawal liability by or on behalf of the Pension Plans were completely and fully released against all past, present, and future subsidiaries and affiliates of the Debtors, SEACOR, and Reorganized Debtors, including CG Railway.

108.    Defendant CG Railway has suffered irreparable reputational injury from the Plaintiffs' attempts to pursue unpaid contribution and withdrawal liability claims against it that were completely and fully released against it by the terms of the Settlement Agreements.

109.    Further, Defendant CG Railway has and will continue to suffer needless and unnecessary monetary injury in the form of legal costs and fees associated with having to defend against the unwarranted demands from the Pension Plans.

110.    Monetary damages are inadequate to compensate Defendant CG Railway, the Debtors, Reorganized Debtors, SEACOR or the foregoing's respective past, present, or future subsidiaries or affiliates, for such injury as the reputational harm, nuisance, and continuing expense caused by the Plaintiffs' actions.  Further, Plaintiffs' course of conduct in trying to rewrite the clear and undisputable terms of the Settlement Agreements hamper the foregoing entities' attempts to emerge successfully from the Bankruptcy Proceeding and operate its businesses.

111.    Considering the balance of hardships between Defendant CG Railway and the Plaintiffs, a remedy in equity is warranted.

112.    The public interest would not be disserved by a permanent injunction.

113.    CG Railway is entitled to an injunction prohibiting the Plaintiffs from pursuing any further action whatsoever in court or out of court to recover against the Debtors, Reorganized Debtors, or SEACOR or the foregoing's respective past, present, or future subsidiaries or affiliates, including the Defendant CG Railway, on account of claims arising from or related in any way to:  (1) unpaid contributions to the Pension Plans; or (2) any contingent, estimated, or actual withdrawal liability incurred as a result of withdrawal from the Pension Plans.

## **PRAYER FOR RELIEF**

WHEREFORE, CG Railway respectfully requests that the Court enter a declaratory judgment, injunction, and final award in its favor:

a.    Declaring that the Settlement Agreements released the Debtors, Reorganized Debtors, and SEACOR as well as the foregoing's respective past, present, and future subsidiaries and affiliates, including non-Debtor subsidiaries such as Defendant CG Railway from any claims arising from or related in any way to:  (1) unpaid contributions to the Pension Plans; or (2) any contingent, estimated, or actual withdrawal liability incurred as a result of withdrawal from the Pension Plans;

b.    Declaring that any attempt by the Pension Plans to recover any amount in excess of the Settlement Payments from the Debtors, Reorganized Debtors, SEACOR or any of the foregoing's respective past, present, or future subsidiaries or affiliates, on account of claims related to unpaid contributions to the Pension Plans or any contingent,

estimated, or actual withdrawal liability incurred as a result of withdrawal from the

Pension Plans, directly violates the terms of the Plan and Confirmation Order;

c.  Enjoining the Plaintiffs from pursuing any further action to recover against the

Debtors, Reorganized Debtors, or SEACOR or the foregoing's respective past,

present, or future subsidiaries or affiliates, including the Defendant CG Railway, on

account of claims arising from or related in any way to:  (1) unpaid contributions to

the Pension Plans; or (2) any contingent, estimated, or actual withdrawal liability

incurred as a result of withdrawal from the Pension Plans;

d.  Awarding CG Railway attorneys' fees incurred in connection with this adversary

proceeding; and

e.  Awarding CG Railway such other relief as this Court deems just and proper.

Dated: New York, New York      AKIN GUMP STRAUSS HAUER & FELD LLP
March 28, 2019      By: */s/ David H. Botter*
     David H. Botter
     Roxanne Tizravesh
     One Bryant Park
     New York, NY 10036
     Telephone: (212) 872-1000
     Facsimile: (212) 872-1002

     Sarah Link Schultz (admitted *pro hac vice*)
     Marty L. Brimmage
     2300 N. Field Street, Suite 1800
     Dallas, TX 75201
     Telephone: (214) 969-2800
     Facsimile: (214) 969-4343

     *Attorneys for Defendant, CG Railway, LLC*